# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00013-CV

**Travis Central Appraisal District, Appellant**

**v.**

**Wells Fargo Bank Minnesota, N.A., Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. D-1-GN-08-000025, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellee Wells Fargo Bank Minnesota, N.A. ("Wells Fargo") filed suit seeking to compel appellant Travis Central Appraisal District ("TCAD") to downwardly adjust the ad valorem property valuation for property owned by Wells Fargo in accordance with an environmental-use determination issued by the Texas Commission on Environmental Quality ("TCEQ"). The trial court granted summary judgment in favor of Wells Fargo and ordered TCAD to apply the use determination issued by the TCEQ. TCAD did not appeal from that judgment. Thereafter, Wells Fargo filed a motion for sanctions, asserting that TCAD was still refusing to apply the use-determination exemption as ordered by the trial court. The trial court granted the motion and ordered TCAD to pay Wells Fargo $97,459 in sanctions plus $7,500 in attorney's fees. TCAD appeals, arguing that the sanctions order was an abuse of discretion because it had acted in good faith. We will affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

Wells Fargo owns an apartment complex (the "property"), which was built over a closed municipal solid-waste landfill. After taking measures to bring the property into compliance with existing environmental regulations, Wells Fargo filed an application with the TCEQ to have the property declared a "pollution control property," thereby entitling Wells Fargo to apply for a property-tax exemption. *See* Tex. Const. art. VIII, § 1-*l*; Tex. Tax Code Ann. § 11.31 (West 2008). On its application, Wells Fargo described each of the portions of real estate and property improvements for which it sought exemption. Among the improvements relevant to this appeal, Wells Fargo listed "Fugitive Emissions Containment Structures" as a property improvement to be exempt under its application. Wells Fargo identified these as "[s]tructures used to contain, for monitoring purposes, emissions released from decomposing materials. Floor level structures contain pollution control equipment (continuous emission monitors) used to detect VOCs." Wells Fargo stated on its application that these structures were not taxable on or before January 1, 1994. *See* Tex. Const. art. VIII, § 1-*l*(b) ("This section applies to real and personal property used as a facility, device, or method for the control of air, water, or land pollution that would otherwise be taxable for the first time on or after January 1, 1994.").

After reviewing Wells Fargo's application, the TCEQ issued its final use determination, which described the pollution-control property as follows:

> Real Estate: 594,208 sq ft used for liners and cover system for landfill, slurry walls, and surface impoundments. Site contains 2 stormwater retention ponds size 1,244 sq. ft. and 65,586 sq. ft.
> Property: Continuous emission monitors; liners over landfill to restrict escape of wastes; semi-active gas extraction system for fugitive methane; methane monitoring

2

& control equipment; two stormwater containment ponds; sloping of concrete surfaces for leachate collection and removal; landfill final cover system; groundwater monitoring wells; fugitive emissions containment structures; and building for active gas extraction system.

It then stated the TCEQ's final determination as to the property, finding:

A positive use determination for 100% of the two stormwater retention ponds real estate (1,224 sf + 65,586 sf); continuous emission monitors; liners over landfill; semi-active gas extraction system; methane monitoring & control equipment; two stormwater containment ponds; sloping of concrete surfaces for leachate collection and removal; landfill final cover system; groundwater monitoring wells; fugitive emissions containment structures; and building for active gas extraction system. A negative determination for the 594,208 sq. ft. of real estate which is being used to house a commercial apartment complex.

Pursuant to section 11.31(d) of the tax code, the executive director of the TCEQ sent notice to the chief appraiser of TCAD informing it of the application and final determination. Neither Wells Fargo nor the chief appraiser of TCAD appealed the executive director's determination. *See* Tex. Tax Code Ann. § 11.31(e) (providing that either party may appeal determination to TCEQ within 20 days).

Having obtained its use determination from the TCEQ, Wells Fargo applied to TCAD for a property-tax exemption. TCAD, purporting to act "pursuant to the use determination," granted Wells Fargo a partial tax exemption of $120,258, which it arrived at in the following manner:

TCAD valued the land at $1.80 per square foot, taking into account a ten percent environmental adjustment. The value of the land was calculated at $1,069,574 (594,208 square feet x $1.80/square foot). Based on the use determination letter, the total square footage of the pollution control equipment was limited to 66,810 square feet (1,224 square feet + 65,586 square feet). TCAD determined the value of the exemption at $120,258 (66,810 x $1.80/square foot).

3

TCAD then subtracted the value of the exemption ($120,258) from the value of the land ($1,069,574) for a total land value of $949,316.

The total appraised value for the property for tax year 2007 was $10,794,842, with $9,845,526 accounting for the improvement value of the property.[1]

In other words, TCAD determined that none of the real property on which the apartment complex was situated was exempt as a result of the TCEQ's order because property used for residential purposes is not "pollution control property" as a matter of law. *See* Tex. Const. art. VIII, § 1-*l*; Tex. Tax Code Ann. § 11.31(a) ("Property used for residential purposes . . . is ineligible for an exemption under this section.").

After paying under protest the taxes assessed on the property, Wells Fargo appealed TCAD's determination to the Travis Appraisal Review Board. *See* Tex. Tax Code Ann. § 41.41(a)(4). The Board upheld TCAD's determination, and Wells Fargo filed suit for judicial review in district court. *See id.* § 42.01(1)(A) (West 2008), § 42.21 (West Supp. 2009). In its original petition, Wells Fargo asserted that TCAD had failed to adjust its property-tax valuation for the property in light of the TCEQ's use determination, which it alleged amounted to an arbitrary denial of the exemption and a violation of its due process rights. The parties filed cross-motions for summary judgment, joining issue in their interpretations of the TCEQ's use determination. TCAD urged by its motion for summary judgment that the plain language of the tax code prevented Wells Fargo from seeking an exemption for the apartment complex itself, which was "used for residential

---

[1] These calculations were provided by TCAD's Interim Director of Commercial Appraisal, Kay Bisson, who valued the property for tax year 2007 and whose affidavit was attached to TCAD's motion for summary judgment.

4

purposes" and therefore was ineligible under the Texas Constitution and the tax code. TCAD further argued that it—not the TCEQ—is vested with the authority to grant the pollution-control tax exemption under section 11.43 of the tax code. Accordingly, TCAD asserted, application of the use determination must be confined to the $120,258 partial exemption described above.

The trial court granted Wells Fargo's motion for summary judgment, which sought a declaration that it was entitled to the use-determination exemption and a resulting adjustment in the property-tax assessment for the property. The final order, in addition to granting Wells Fargo's summary-judgment motion, stated that "Defendants are ordered to apply the pollution control use determination as issued by the Executive Director of the TCEQ on April 10, 2007." TCAD filed a motion for new trial, arguing that the trial court misinterpreted the TCEQ order and thus erred in determining that the entire property qualified for tax exemption. Alternatively, TCAD urged that because the TCEQ order stated that only a portion of the property qualified as pollution-control property, summary judgment was improper because there were disputed fact issues as to which portion of the property was actually tax exempt. The trial court denied TCAD's motion for new trial. TCAD did not appeal.

Several months later, Wells Fargo filed a motion for sanctions asserting that, "[d]espite the court's order directing defendant to apply the Use Determination Exemption to [the property], defendant has refused to do so." TCAD took the position in response to the request for sanctions that it *had* applied the use determination made by TCEQ and that the interpretation of the use determination order urged by Wells Fargo was in conflict with the governing law. At the hearing on Wells Fargo's sanctions motion, TCAD continued to assert its position that the TCEQ order

5

did not exempt the 594,208 square feet of real property on which the apartment complex stood. TCAD's witness, Kay Bisson, testified that she had applied the TCEQ use determination only to the 65,586 square feet of land that makes up the stormwater-retention ponds. She further testified that the property had been on the tax rolls "since probably about 1985," contrary to Wells Fargo's assertion that the property became taxable for the first time on or after January 1, 1994. On cross-examination, Bisson stated that she did not take into consideration any of the improvements listed on Wells Fargo's application under "Improvements to Be Exempt," including the first-floor fugitive emissions containment structures, nor did she apply any exemptions to those improvements.

At the conclusion of the hearing, the trial court ordered that Wells Fargo recover as a sanction the sum of $97,459, representing the portion of the ad valorem tax assessed on the first-floor units, which Wells Fargo had paid under protest. The trial court also awarded Wells Fargo $7,500 in attorney's fees. TCAD now appeals from this sanctions order.

## STANDARD OF REVIEW

A trial court's ruling on a motion for sanctions is reviewed for an abuse of discretion. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985). The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but "whether the court acted without reference to any guiding rules and principles." *Cire*, 134 S.W.3d at 838-39 (citing *Downer*, 701 S.W.2d at 241). The trial court's ruling should be reversed only if it was arbitrary or unreasonable. *Id.* at 839.

6

**DISCUSSION**

On appeal, TCAD argues that the trial court abused its discretion in ordering sanctions for its noncompliance with the TCEQ's use-determination order because it attempted in good faith to apply the order in accordance with the governing statutes. In so arguing, TCAD asserts that neither the summary judgment order nor the sanctions order specify how the TCEQ's order should be interpreted or how TCAD had failed to comply with it. Additionally, TCAD maintains that the sanctions order is arbitrary and unreasonable because it is based on a misapplication of the law and because it does not state any authority or good cause for imposing sanctions.

As an initial matter, we note that although Wells Fargo initiated the proceeding giving rise to this appeal as a request for "sanctions," what it actually sought was the enforcement of the trial court's prior order in its suit for judicial review of the appraisal review board's final determination. It is undisputed that the award of $97,459 represents the portion of the ad valorem property tax assessed for the first-floor level of the property, which the trial court in the earlier proceeding had found to qualify for tax exemption and which Wells Fargo had paid under protest. The only true "sanction" sought by Wells Fargo was the attorney's fee award of $7,500.

Under chapter 42 of the tax code, the district court in a suit for judicial review is authorized to enter any orders "necessary to preserve the rights protected by and impose duties required by the law." Tex. Tax Code Ann. § 42.24(3); *see also id.* § 42.43(a) (providing taxing unit shall refund to property owner difference between amount of taxes paid and amount of taxes for which property owner is judicially determined to be liable); *MAG-T, L.P. v. Travis Cent. Appraisal Dist.*, 161 S.W.3d 617, 633 (Tex. App.—Austin 2005, pet. denied). The tax code further authorizes

7

the award of reasonable attorney's fees to a property owner who prevails in an appeal to the court. *See id.* § 42.29(a). The trial court, having previously determined that Wells Fargo was entitled to the full exemption as urged in its motion for summary judgment, was authorized to enter any orders necessary to carry out the earlier, unappealed final judgment in Wells Fargo's tax-protest suit. Because the record establishes that TCAD did not comply with the earlier judgment by refunding Wells Fargo the amount it had paid under protest, the order directing TCAD to pay that $97,459 as a "sanction" is neither arbitrary nor unreasonable.

Given the procedural posture of this case, TCAD's arguments regarding the correctness of the trial court's initial interpretation of the TCEQ order are at this stage unavailing. As Wells Fargo points out, TCAD had urged its interpretation of the TCEQ order not only in its motion for summary judgment in the tax-protest suit, but also in its motion for new trial. TCAD did not appeal those rulings; it cannot now justify its failure to comply with the order directing it to "apply the pollution control use determination" in the manner urged by Wells Fargo, the prevailing party in the initial tax-protest suit, based on an interpretation that has been twice rejected by the lower courts and never appealed.

On this record, we cannot conclude that the trial court's sanctions order was an abuse of discretion. It is evident that the trial court based its decision to award sanctions on its understanding that the summary-judgment order required TCAD to downwardly adjust the property-tax valuation for the property and the undisputed evidence that it had failed to do so. *Cf. Kennedy v. Kennedy*, 125 S.W.3d 14, 19 (Tex. App.—Austin 2002, pet. denied) (reversing trial court's sanction award where record did not establish that sanctioned party's conduct significantly

8

interfered with court's exercise of its core functions). Here, the trial court essentially determined that the prior order granting Wells Fargo's motion for summary judgment was sufficiently clear in requiring TCAD to adjust its valuation of the property in a manner consistent with Wells Fargo's reading of the TCEQ order, as presented in its motion for summary judgment. Indeed, TCAD itself seems to have understood the import of the trial court's summary judgment order, as reflected in the following statement from TCAD's motion for new trial: "In granting Plaintiff's motion for summary judgment and denying Defendant's motion for summary judgment, the court determined that the entire property, *even that part of the property that is not exempt per the TCEQ order*, is entitled to a pollution control exemption." (Emphasis in original.) Although TCAD obviously disagreed with that ruling, it did not perfect an appeal from the summary judgment. A party cannot ignore or flout a court order simply because it believes the court got it wrong. The trial court was therefore entitled to exercise its inherent power "to compel compliance with valid orders incident to the administration of justice"—a power that is "fundamental, and closely related to the core functions of the judiciary." *Kutch v. Del Mar Coll.*, 831 S.W.2d 506, 510 (Tex. App.—Corpus Christi 1992, no writ).

TCAD's continued efforts to argue that the summary-judgment order is ambiguous and that its interpretation of the TCEQ use determination is the proper one constitute an argument that the trial court erred in granting Wells Fargo's motion for summary judgment. That order, however, was not appealed, and the issues resolved by that final judgment are not before this Court. Furthermore, the record establishes that Wells Fargo was obligated to bring this motion for sanctions in order to enforce the earlier judgment, thus providing a basis for the trial court's award of attorney's fees in this proceeding.

9

In light of the foregoing, we overrule TCAD's issues on appeal and affirm the trial court's sanctions order.

**CONCLUSION**

Because the trial court did not abuse its discretion, we affirm the order awarding Wells Fargo sanctions in the amount of $94,459, plus $7,500 in attorney's fees.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed:   January 26, 2010